UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JOANNE E. ORMAND, M.D., | ) | CIV. 09-4161-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING IN PART |
| vs. | ) | AND DENYING IN PART |
| | ) | PLAINTIFF'S MOTION FOR |
| SANFORD CLINIC, formerly known | ) | SUMMARY REMAND AND |
| as SIOUX VALLEY CLINIC, a South | ) | DENYING DEFENDANT'S |
| Dakota nonprofit corporation, | ) | MOTION TO DISMISS |
| | ) | |
| Defendant. | ) | |

Plaintiff, Dr. Joanne Ormand, moves for summary remand and for
recovery of costs incurred as a result of the case being removed to federal
court. Defendant, Sanford Clinic, resists Ormand's motion and moves to
dismiss Counts 1 through 6 and part of Count 7 in the amended complaint
under Federal Rule of Civil Procedure 12(b)(6).

## PROCEDURAL BACKGROUND

On August 14, 2008, Ormand brought suit in state court seeking
declaratory relief with regard to a non-compete provision in an employment
agreement with Sanford. On October 28, 2009, the complaint was dismissed
in state court because the issue had become moot as a result of Sanford
having released Ormand from the non-compete provision. That same day,
Ormand filed an amended complaint with seven counts that alleged various
causes of action. On November 3, 2009, Sanford removed the case to federal

court on the basis of federal question jurisdiction and supplemental jurisdiction and moved to dismiss the amended complaint. The following day, Ormand moved to remand the case to state court.

## DISCUSSION

## I.    Ormand's Motion for Remand

Ormand argues that pursuant to the forum selection clause in the employment agreement, the court must remand the case to state court. Sanford argues that the forum selection clause does not unequivocally waive the right to remove the case to federal court. Sanford alternatively argues that the forum selection clause only applies to those claims that pertain to the employment agreement. Both parties agree that the forum selection clause is valid and enforceable. Therefore, the issue before the court is the interpretation of the forum selection clause.

### A.    Exclusivity

The forum selection clause at issue is found in Section 16 of the employment agreement. Section 16 states in its entirety that "[t]his Agreement shall be construed and enforced under and in accordance with the laws of South Dakota, with exclusive venue for resolution of disputes in the State Circuit Court for the Second Judicial Circuit, Minnehaha County." (Docket 6, Ex. A at 6.)

The court is guided at the outset by the analysis found in <u>Dunne v. Libbra</u>, 330 F.3d 1062 (8th Cir. 2003).  In <u>Dunne</u>, the forum selection clause provided that " '[t]his agreement shall be governed by and construed and enforced in accordance with the laws of the State of Illinois, and the parties consent to jurisdiction to [sic] the state courts of the State of Illinois.' " <u>Id.</u> at 1063 (alterations in original).  The Eighth Circuit Court of Appeals held that Illinois law applied for purposes of construing the contract's language because "[t]he stock purchase agreement state[d] that it 'shall' be construed in accordance with Illinois law." <u>Id.</u> at 1064.[1]  The court then held in <u>Dunne</u> that "the forum selection clause [was] permissive" because there was "no plain language basis to support a finding of exclusivity[.]" <u>Id.</u>  Specifically, the court noted that "the forum selection clause [did] not use the words 'exclusive,' 'only,' 'must,' or any other terms that might suggest exclusivity." <u>Id.</u>

In direct, material contrast, the forum selection clause in the contract at issue uses the word "exclusive" in relation to the "venue for resolution of disputes" provision.  (Docket 6, Ex. A at 7.)  Thus, the State Circuit Court for the Second Judicial Circuit, Minnehaha County, is the exclusive venue for

---

[1] Similarly, the employment agreement in this case states that the "Agreement <u>shall</u> be construed and enforced under and in accordance with the laws of South Dakota[.]"  (Docket 6, Ex. A at 6 (emphasis added).)  Thus, the laws of South Dakota law apply for purposes of construing the forum selection clause.  <u>See Dunne</u>, 330 F.3d at 1064.

3

resolution of disputes.  Next, the court must determine the scope of the forum

selection clause.

## B.  Scope

Sanford argues that if the forum selection clause provides for an

exclusive state court venue, it only applies to "disputes regarding the

Agreement."  (Docket 14 at 3-4.)  Ormand argues that the clause applies to all

of the claims in the amended complaint because they are "claims and causes of

action [that] arise from the fact that Dr. Ormand and Sanford entered into a

written contract in 2004."[2]  (Docket 15 at 11.)  Ormand also argues that any

ambiguity should result in the ambiguous language being construed against

Sanford because Sanford drafted the employment agreement.

South Dakota law applies for purposes of construing the clause.  See

Dunne, 330 F.3d at 1064.  "Absent some ambiguity in the contract terms, the

plain and ordinary meaning of the[] written document[] is controlling."  Full

House, Inc. v. Stell, 640 N.W.2d 61, 64 (S.D. 2002) (citation omitted).

"Whether the language of a contract is ambiguous is a question of law."

Bunkers v. Jacobson, 653 N.W.2d 732, 738 (S.D. 2002) (citation omitted).

"Ambiguity exists 'when it is capable of more than one meaning when viewed

---

[2] Ormand also argues that the comity principles require that the entire
case be remanded to state court.  (Docket 15 at 11.)  Ormand does not explain
or cite to any authority that supports this proposition.  Because Ormand's
argument is not supported by any legal authority, the court does not address
this contention.

objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.' " Id. at 738 (quoting Divich v. Divich, 640 N.W.2d 758, 761 (S.D. 2002)).

After reviewing the employment agreement, the court finds that the forum selection clause is not ambiguous. The forum selection clause applies to disputes that arise under the employment agreement because the sentence containing the forum selection clause begins with the phrase "[t]his Agreement." (Docket 6, Ex. A at 7.) There is nothing in the agreement that could reasonably support a differing interpretation of the forum selection clause. Thus, Section 16 establishes the exclusive forum for addressing those disputes that arise under the agreement. The next issue, then, is determining what disputes arise under the employment agreement. See Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 694 (8th Cir. 1997).

### C.    Disputes Arising Under the Agreement

In Terra International, Inc. v. Mississippi Chemical Corp., 119 F.3d 688 (8th Cir. 1997), the Eighth Circuit Court of Appeals recognized "three generally applicable tests" or "guiding principles" for purposes of determining whether "a forum selection clause will apply to tort claims." Id. at 694. The first guiding principle asks whether the "tort claims 'ultimately depend on the existence of a contractual relationship' between the parties[.]" Id. (quoting Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983)). If so,

"such claims are covered by a contractually-based forum selection clause." Id. (citation omitted). The second guiding principle states: " '[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract.' " Id. (alteration in original) (quoting Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988)). And under the third guiding principle, " 'contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.' " Id. (quoting Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993)).

### 1. Counts 1 Through 3

Sanford does not dispute that Counts 1, 2, and 3 arise under the employment agreement.[3] Sanford argues, however, that the remaining claims in the amended complaint are not governed by the forum selection clause because they arise outside of the agreement.

### 2. Count 4

Count 4 alleges that Sanford committed fraud and deceit by representing to Ormand that the mediator, who was used for purposes of addressing Ormand's concerns about the other physicians, was an "outside mediator" when in fact the mediator was married to Sanford's Vice President of Corporate

---

[3] Count 1 seeks a declaratory judgment with regard to the non-compete provision in the agreement. Count 2 is a breach of contract claim. Count 3 claims a breach of the contract's implied covenant of good faith.

Responsibility and Corporate Compliance Officer.  Count 4 also alleges that

Sanford committed fraud and deceit by failing to disclose to Ormand that the

"outside mediator" was an attorney who was a practicing partner in a law firm

that represented Sanford.  Count 4 states that Ormand was damaged by this

misrepresentation because Sanford improperly obtained evidence to use

against Ormand.

The first general principle or test outlined in <u>Terra International, Inc.</u> is

"not very instructive" in determining whether to apply the forum selection

clause to the claim alleged in Count 4.  <u>See</u> <u>Terra Int'l, Inc.</u>, 119 F.3d at 694-

95.  The claim does not depend on the existence of a contractual relationship

because it is a tort that arises under SDCL 20-10-1.[4]  <u>See</u> SDCL 20-10-1 ("One

who willfully deceives another, with intent to induce him to alter his position to

his injury or risk, is liable for any damage which he thereby suffers.").  The

events surrounding the mediation, however, would not have occurred unless

the employment agreement was signed by the parties because Ormand would

not have otherwise been initially hired by Sanford as an employee.  <u>Cf.</u> <u>Terra</u>

_____

[4] Count 4 also cites SDCL 53-4-4 through 53-4-6.  These statutes, however, do not allow for the apparent requested relief of damages with regard to Count 4 because "SDCL 53-4 makes contracts obtained by duress, fraud, undue influence, or mistake voidable."  <u>Schmidt v. Wildcat Cave, Inc.</u>, 261 N.W.2d 114, 117 (S.D. 1977) (stating that the statutes were not applicable because plaintiffs "were not raising a defense to an action for damages for a breach of the contract, nor were they attempting to have the contract rescinded . . . or reformed . . ." (internal citations omitted)).

Int'l, Inc., 119 F.3d at 694-95 (recognizing that the plaintiff's "tort claims do ultimately depend on the existence of a contractual relationship because without the license agreement, [the defendant] would not have provided [the plaintiff] with its neutralizer technology").

Similarly, the second principle does not provide much guidance because the resolution of Count 4 does not depend on any interpretation of the employment agreement. Count 4, however, "directly involve[s] the entire subject matter of the [] agreement," namely the employment relationship between the parties. Cf. id. at 694 (analyzing the applicability of the second guiding principle and noting that "the resolution of these . . . claims does not seem to relate to or require the interpretation of the license agreement" but also recognizing that "one could argue that [the tort claims] 'relate' to the agreement's interpretation because the tort claims directly involve the entire subject matter of the license agreement").

The third principle is the most applicable to the facts in this case. The operative facts at issue with regard to the deceit claim in Count 4 are summarized as follows: (1) Policy C-812 of the Sanford Code of Conduct states that Sanford's "employees have a duty to report perceived violations of law" and that "any retribution against an employee for reporting a question or concern

about a compliance matter" is prohibited;[5] (2) Ormand reported various claims of harassment, verbal abuse, intimidation, and inequity in the overhead allocation; (3) in response to Ormand's claims, mediation was suggested for purposes of addressing Ormand's concerns; (4) Sanford represented that an attorney was an "outside mediator" when the attorney was married to Sanford's Vice President of Corporate Responsibility and Corporate Compliance Officer and also a partner of the law firm that represented Sanford; (5) Ormand relied on the fact that the mediator was an "outside mediator" when she disclosed her various concerns and other information; (6) Sanford had no intention of resolving Ormand's concerns through mediation; and (7) Sanford used the information provided by Ormand to the mediator in such a manner that damaged Ormand.

These facts would be the same operative facts with regard to the alleged breach of the contractual duty to "provide Plaintiff with 'a workplace that is conducive to open and respectful communication and is free of harassment, intimidation and physical or verbal abuse' and to 'strictly prohibit' 'harassment, physical or verbal abuse of any employee . . . and other behavior that creates a hostile work environment for our employees' in accordance with Defendant's 'Professional Excellence Code of Conduct.' " (Docket 1, Ex. C at

---

[5] The employment agreement requires that "Physician shall comply with all applicable bylaws, policies, rules, regulations and credentialing standards[.]" (Docket 6, Ex. A at 3.)

13.)  See Working Chem. Solutions, Inc. v. Env'l Sci. Techs., LLC, 2008 WL

4999069, at *3 (W.D. Ark. Nov. 20, 2008) ("While Plaintiffs' claims of

defamation and tortious interference with business expectancy do not have

obvious parallels in contract claims they do arise out of the 'same operative

facts' as a breach of contract claim would." (citing Terra Int'l, Inc., 119 F.3d at

694)).  The same is true with regard to the alleged breach of the contractual

duty to "refrain from retribution against Plaintiff in carrying out her duty to

report perceived violations of law . . . or for reporting a question or concern

about compliance matter in accordance with Policy C-812 of the Sanford Code

of Conduct."  (Docket 1, Ex. C at 13.)  See Working Chem. Solutions, Inc., 2008

WL 4999069, at *3.  Thus, the third principle supports applying the forum

selection clause to Count 4 because the claim therein involves "the same

operative facts as a parallel claim for breach of contract."  See id. at 695.

### 3.    Count 5

Count 5 alleges that Ormand was fired by Sanford in retaliation for

reporting to supervisory authorities her concerns regarding (1) harassment and

a hostile work environment, (2) patient quality of care, misdiagnosis in

endoscopy and unnecessary endoscopy procedures, (3) retaliation and

retribution, and (4) unequal compensation of part-time gastroenterologists.

The same three general principles set forth in Terra International,

Inc.,119 F.3d at 694, apply with regard to Count 5.  Under the first principle,

Count 5 does not depend on the existence of a contractual relationship because even if Ormand was an at-will employee, the claim could proceed based on the exception to the at-will doctrine that an employer cannot terminate an at-will employee "for whistleblowing that serves a public purpose."[6] Jarman v. Barndt, 2006 WL 88657, at *6 (D.S.D. Jan. 12, 2006) (citing Dahl v. Combined Ins. Co., 621 N.W.2d 163, 166-67 (S.D. 2001)).  Had there been no employment agreement, however, the circumstances giving rise to the claim would not have occurred in the first place because Ormand would not have otherwise been employed by Sanford.  See Terra Int'l, Inc., 119 F.3d at 694-95 (recognizing that the plaintiff's "tort claims do ultimately depend on the existence of a contractual relationship because without the license agreement, [the defendant] would not have provided [the plaintiff] with its neutralizer technology.").  Thus, the first principle does not provide significant guidance with regard to the claim in Count 5.

With regard to the second principle, Count 5 does not depend on any interpretation of the employment agreement.  Count 5 does, however, "directly

---

[6] Ormand's claim that she raised concerns about the "patient quality of care, misdiagnosis in endoscopy and unnecessary endoscopy procedures" arguably served a public purpose.  See Dahl v. Combined Ins. Co., 621 N.W.2d 163, 167 (S.D. 2001) (" 'We believe that whistleblowing activity which serves a public purpose should be protected.  So long as employees' actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged.' " (quoting Wagner v. City of Globe, 722 P.2d 250, 257 (Ariz. 1986))).

involve the entire subject matter of the [] agreement," namely the employment relationship between the parties. Cf. Terra Int'l, Inc., 119 F.3d at 694 (analyzing the applicability of the second guiding principle and noting that "the resolution of these . . . claims does not seem to relate to or require the interpretation of the license agreement" but also recognizing that "one could argue that [the tort claims] 'relate' to the agreement's interpretation because the tort claims directly involve the entire subject matter of the license agreement"). Thus, the second principle is also not very helpful with regard to Count 5.

The third principle outlined in Terra International, Inc. is again the most applicable with regard to the claim alleged in Count 5. The "operative facts" with regard to Count 5 are summarized as follows: (1) on May 12, 2008, Ormand wrote a letter to her supervisors that reported incidents and issues arising under Sanford's Professional Excellence Code of Conduct and Sanford's Corporate Compliance Plan; (2) the letter included concerns about harassment and a hostile work environment, patient quality of care, misdiagnosis in endoscopy and unnecessary endoscopy procedures, retaliation and retribution, and unequal compensation of part-time gastroenterologists; (3) on May 20, 2008, Ormand met with Sanford's Chief Human Resource Officer and provided him with a copy of a document that detailed the harassment, verbal abuse, and intimidation and contained an analysis of the inequity of her overhead

allocation as compared to other physicians; (4) on May 21, 2008, Sanford's Chief Human Resource Officer told Ormand that her contract would be reviewed by Sanford's legal department and that someone would meet with Ormand regarding her concerns; (5) on June 6, 2008, Ormand received a letter from Sanford stating in part that the "investigations into the allegations of harassment, retaliation and unequal compensation set forth in your May 12, 2008, correspondence . . . have been completed. Sanford has determined that there is insufficient evidence to support your claims or support a violation of Sanford's policies[;]" and (6) on July 14, 2008, Ormand was fired by Sanford.

These operative facts at issue with regard to the retaliation claim in Count 5 are the same operative facts with regard to the alleged breach of the contractual duty to provide Ormand with " 'a workplace that is conducive to open and respectful communication and is free of harassment, intimidation and physical or verbal abuse' and to 'strictly prohibit' 'harassment, physical or verbal abuse of any employee . . . and other behavior that creates a hostile work environment for our employees' in accordance with Defendant's 'Professional Excellence Code of Conduct' " and the contractual duty to "refrain from retribution against Plaintiff in carrying out her duty to report perceived violations of law . . . or for reporting a question or concern about compliance matter in accordance with Policy C-812 of the Sanford Code of Conduct." (Docket 1, Ex. C at 13.) Cf. Working Chem. Solutions, Inc., 2008 WL 4999069,

at *3 ("While Plaintiffs' claims of defamation and tortious interference with business expectancy do not have obvious parallels in contract claims they do arise out of the 'same operative facts' as a breach of contract claim would." (citation omitted)). Thus, under the third principle, the forum selection clause applies to Count 5 because the claim involves "the same operative facts as a parallel claim for breach of contract." Terra Int'l, Inc., 119 F.3d at 695.

### 4. Count 6

Count 6 alleges that Sanford discriminated against Ormand based on her gender in violation of Title VII and the South Dakota Human Relations Act of 1972 by paying her less than a similarly situated male.[7] Applying the three general principles outlined above, the discrimination claim based on the disparate pay does not fall under the forum selection clause because (1) the claim does not depend on the existence of a contractual relationship, (2) there

---

[7] Count 6 also appears to allege a retaliation claim and a hostile work environment claim. To the extent that Count 6 asserts a retaliation claim, the claim is remanded to state court for the same reasons that Count 5 was remanded as discussed above under section I(C)(3). As to the hostile work environment claim, that dispute is also subject to the forum selection clause because the operative facts, that Ormand was intimidated, insulted, and abused by Sanford, are the same operative facts with regard to the alleged breach of the contractual duty that Sanford provide Ormand with " 'a workplace that is conducive to open and respectful communication and is free of harassment, intimidation and physical or verbal abuse[.]' " (Docket 1, Ex. C at 13.) See Terra Int'l, Inc., 119 F.3d at 695 (finding that the contract's forum selection clause applied to the tort claims because the tort claims had the same operative facts as a parallel claim for breach of contract). Thus, the hostile work environment claim in Count 6 is also remanded because it is a matter that arises under the agreement. See id.

is no need to interpret the employment agreement in order to resolve the claim

in Count 6, and (3) the operative facts with regard to Count 6 are not the same

with regard to any breach of contract claim.  See Terra Int'l, Inc., 119 F.3d at

694-95.  Specifically, a different operative fact with regard to Count 6, as

compared to a parallel claim for a breach of contract, is that Sanford paid a

similarly situated male more than Sanford paid Ormand.  The fact that a

similarly situated male employee was paid more than Ormand has no bearing

on the breach of contract claim between Ormand and Sanford.  Thus, Count 6

falls outside of the agreement's forum selection clause because it alleges a

claim that involves different operative facts than the parallel claim for a breach

of contract and does not otherwise depend on a contractual relationship or an

interpretation of the agreement's provisions.  See id. at 694.

## 5.    Count 7

Count 7 alleges that Sanford violated the Equal Pay Act of 1963 by

reducing the amount of fixed overhead for a male physician while failing to

reduce Ormand's fixed overhead in a similar manner.[8]  Similar to Count 6,

---

[8] While Count 7 cites the Equal Pay Act of 1964, the court assumes that
Count 7 intends to cite the Equal Pay Act of 1963.  See 29 U.S.C. 206(d)
(indicating in the notes that subsection (d) was added pursuant to 1963
amendments).  The relevant subsection of the Equal Pay Act of 1963 states that

> [n]o employer having employees subject to any provisions of this
> section shall discriminate . . . between employees on the basis of
> sex by paying wages to employees in such establishment at a rate
> less than the rate at which he pays wages to employees of the

Count 7 does not fall under the forum selection clause because (1) the claim does not depend on the existence of a contractual relationship, (2) there is no need to interpret the employment agreement in order to resolve the claim in Count 7,[9] and (3) the operative facts with regard to Count 7 are not the same as the breach of contract claim.  See id. at 694-95.  Specifically, a different operative fact with regard to Count 7 as compared to the parallel claim for the breach of contract is that Ormand was paid less than a similarly situated male. The fact that Sanford paid another similarly situated male employee more money than Ormand does not pertain to the breach of contract claim between Ormand and Sanford.  Therefore, the operative facts with regard to Count 7 are different than the parallel breach of contract claim.  Thus, Count 7 falls outside of the agreement's forum selection clause because it alleges a claim that involves different operative facts than the parallel claim for breach of contract and does not otherwise arise under the agreement that was entered into by the parties.  See id. at 694.

---

opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]"

29 U.S.C. § 206(d)(1).

[9] While the terms of the employment agreement might explain how Ormand's salary was determined, the claim against Sanford in Count 7 does not depend on how those terms are interpreted.

## II.    Sanford's Motion to Dismiss

Sanford moves to dismiss Counts 1 through 6 and part of Count 7 for failing to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  Because Counts 1 through 5 have been remanded to state court, only Counts 6 and 7 are addressed.

Under Rule 12(b)(6), the facts alleged in the complaint must be considered true and all inferences must be viewed in favor of the nonmoving party.  Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004) (citing Stone Motor Co. v. Gen. Motors Corp., 293 F.3d 456, 465 (8th Cir. 2002)).  Recently, the United States Supreme Court emphasized that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. at 1949.  The Supreme Court further stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  "The plausibility standard . . . asks for more than a sheer possibility that defendant has acted unlawfully."  Id. at 1949.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.; see also Braden v. Wal-Mart Stores,

Inc., 588 F.3d 585, 594 (8th Cir. 2009) ("A complaint states a plausible claim

for relief if its 'factual content . . . allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.' " (citing Iqbal,

129 S. Ct. at 1949)).  The "fundamental tenet of Rule 12(b)(6) practice" that

"inferences are to be drawn in favor of the non-moving party" has not, however,

been changed.  Braden, 588 F.3d at 595 (citations omitted).

### A.    Count 6

Count 6 alleges that Sanford paid Ormand less than a similarly situated,

part-time male physician in violation of Title VII of the Civil Rights Act of 1964

and the South Dakota Human Relations Act of 1972.[10]  With regard to the Title

VII claim, "[t]o establish a prima facie case of wage discrimination based on

unequal pay, a plaintiff must show that the Sanford paid male workers more

than she was paid for equal work in jobs that required equal skill, effort, and

responsibility and were performed under similar conditions."  Buettner v. Arch

Coal Sales Co., Inc., 216 F.3d 707, 719 (8th Cir. 2000) (citation omitted).  See

also Devericks v. John Morell & Co., 297 N.W.2d 325, 327 (S.D. 1980)

(recognizing that "Title VII of the Civil Rights Act of 1964 [is] the federal

counterpart of the South Dakota Human Relations Act of 1972").

_____

[10] To the extent that Count 6 asserts a retaliation claim and a hostile
work environment claim, those claims are remanded to state court for the
reasons discussed above in section I(C)(4).  Only the claim that Sanford
discriminated against Ormand by paying her less than a similarly situated
male is addressed with regard to Sanford's motion to dismiss.

Accepting the factual allegations as true and drawing reasonable inferences in favor of the nonmoving party, Ormand is a female who was a part-time gastroenterologist in Sanford's GI Department, and she was charged 75 percent for fixed overhead expenses. She performed her work in a satisfactory manner and was otherwise qualified to perform her job. Sanford employed a male physician gastroenterologist in its GI Department as a part-time employee and reduced the amount of fixed overhead that had been charged to that employee from 75 percent down to 37.5 percent.[11] After having been made aware of the differing overhead charges, Sanford did nothing to adjust the disparate salaries between Ormand and her fellow part-time male gastroenterologist. As a result of the differing overhead expenses charged to Ormand and the male employee, Ormand was paid less than a similarly situated male employee.

These facts are sufficient for the court to draw the reasonable inference that Sanford is liable for the misconduct alleged. Based on these facts as they were alleged in the amended complaint, the court finds that Count 6 contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Iqbal, 129 S. Ct. at 1949. Thus, Sanford's motion to dismiss Count 6 is denied.

---

[11] While these facts are taken from Count 7, Count 6 incorporates the facts by reference. (Docket 1, Ex. C at 28.)

Sanford argues in the alternative that if Count 6 is not dismissed in its entirety, it should be dismissed inasmuch as it seeks to recover for back pay that is owed for two years prior to the date that Ormand filed her charge of discrimination with the EEOC. Sanford has not identified any authority, however, indicating that Rule 12(b)(6) can be used to limit the amount of money damages. In fact, a plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a "claim" in its entirety. <u>See</u> Fed. R. Civ. P. 12(b)(6) (allowing for a motion to dismiss based upon a "failure to state <u>a claim</u> upon which relief can be granted" (emphasis added)); 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357, at 668-671 (3d ed. 2004) (noting that the question under Rule 12(b)(6) is whether "the complaint states <u>any</u> legally cognizable claim for relief" (emphasis added)). For these reasons, Sanford's motion to dismiss Count 6 is denied.

**B.      Count 7**

Sanford similarly argues that Count 7 should be dismissed to the extent that it seeks money damages prior to October 28, 2007, which is two years prior to the date that the amended complaint was filed. <u>See</u> 29 U.S.C. § 255 ("Any action . . . to enforce any cause of action for unpaid minimum wages, . . . or liquidated damages, under the Fair Labor Standards Act of 1938[,] . . . may be commenced within two years after the cause of action accrued[.]"). This

argument is denied for the same reasons articulated above as to Count 6. Thus, Sanford's motion to dismiss Count 7 is denied.

## III.    Costs and Attorney's Fees

Ormand seeks to recover costs and attorney's fees associated with Sanford's removal of the case to federal court.  See 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").  "The decision to award fees is discretionary."  Nixon v. Nextel W. Corp., 248 F. Supp. 2d 885, 894 (E.D. Mo. 2003) (citation omitted).  Because some of the claims in the amended complaint were properly removed to federal court, the court finds that an award of fees is not appropriate in this case.

## CONCLUSION

For the reasons set forth above, the claims in Counts 1 through 5 and the retaliation and hostile work environment claims in Count 6 are remanded to the Circuit Court for Minnehaha County for the State of South Dakota, Second Judicial Circuit in Sioux Falls, South Dakota, pursuant to 28 U.S.C. § 1447(c).  Sanford's motion to dismiss those claims is denied as moot. Sanford's motion to dismiss the gender discrimination claim based on disparate pay in Count 6 and Count 7 is denied.  Ormand's request to recover just costs and actual expenses incurred as a result of Sanford removing the case to federal court is denied.

Therefore, it is hereby

ORDERED that Ormand's motion for remand (Docket 9) is granted in part and denied in part as set forth above;

IT IS FURTHER ORDERED that Ormand's request for costs and expenses (Docket 9) is denied;

IT IS FURTHER ORDERED that Sanford's motion to dismiss (Docket 5) is denied as set out above.

Dated May 13. 2010.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE